# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| ACCESSIFY, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FINANCIAL TIMES LIMITED,<br><br>　　　　Defendant. | Civil Action No. 2:23-cv-00456<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Accessify, LLC (hereinafter, "Accessify" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Financial Times Limited, (hereinafter, "Financial Times" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.　　This is a patent infringement action to stop Financial Times's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | U.S. Patent No. | Title | |
|---|---|---|---|
| A. | 11,418,356 (the "'356 Patent") | Enhanced Security Preview Of Digital Content | https://patentcenter.uspto.gov/applications/16728621<br><br>https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11418356 |
| B. | 7,316,032 (the "'032 Patent") | Method For Allowing A Customer To Preview, Acquire And/Or Pay For Information And A System Therefor | https://patentcenter.uspto.gov/applications/10307832<br><br>https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7316032 |

|  | U.S. Patent No. | Title |  |
|---|---|---|---|
| C. | 7,562,397 (the "'397 Patent") | Method And System For Facilitating Search, Selection, Preview, Purchase Evaluation, Offering For Sale, Distribution, And/Or Sale Of Digital Content And Enhancing The Security Thereof | https://patentcenter.uspto.gov/ applications/11017381 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/756 2397 |
| D. | 8,069,489 (the "'489 Patent") | Method And System For Facilitating Search, Selection, Preview, Purchase Evaluation, Offering For U.S. Patent Documents Sale, Distribution, And/Or Sale Of Digital Content And Enhancing The Security Thereof | https://patentcenter.uspto.gov/ applications/12488586 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/806 9489 |
| E. | 10,554,424 (the "'424 Patent") | Enhanced Security Preview Of Digital Content | https://patentcenter.uspto.gov/ applications/12497687 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/105 54424 |
| F. | 7,039,722 (the "'722 Patent") | Method And Apparatus For Translating Web Addresses And Using Numerically Entered Web Addresses | https://patentcenter.uspto.gov/ applications/09709645 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/703 9722 |
| G. | 7,752,656 (the "'656 Patent") | Controlling Access To Name Service For A Domain Name System | https://patentcenter.uspto.gov/ applications/12179084 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/775 2656 |

2.    Accessify seeks injunctive relief and monetary damages.

**PARTIES**

3.    Accessify is a limited liability company formed under the laws of Texas with a registered office address located in located in Houston, Texas.

4.     On information and belief, Defendant is a limited company registered in England and Wales.  Defendant's registered address is Bracken House, 1 Friday Street, London, England, EC4M 9BT.  Defendant's company number is 00227590, and Defendant's UK VAT registration number is GB226162332.

5.     On information and belief, Defendant is the publisher of the Newspaper and FT.com.

6.     On information and belief, "THE FINANCIAL TIMES LTD", "FT", and "Financial Times" are trademarks of the Defendant.  *See, e.g.*, *Trademark Electronic Search System*, USPTO, https://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4803:g70059.2.32;  *Trademark Electronic Search System,* USPTO, https://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4803:g70059.2.33.

7.     On information and belief, Financial Times's three main tech hubs are in London, Sofia and Manila.



FIG. 1: Screenshot of the Financial Times's "About Us" webpage, *see About Us*, FINANCIAL TIMES, https://aboutus.ft.com/careers/what-we-do/technologyandproduct (last visited Sept. 18, 2023).

## JURISDICTION AND VENUE

8.     Accessify repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

9.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under

28 U.S.C. § 1331 and § 1338(a).

10.     Financial Times is subject to this Court's specific and general personal jurisdiction under due process because of Financial Times's substantial business in this judicial District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

11.     Specifically, Financial Times intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, by contributing to and through inducement of third parties, and offers and sends its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

12.     Financial Times has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Financial Times regularly sells (either directly or indirectly), its products within this District.  For example, Financial Times has placed and continues to place infringing products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this Judicial District and the State of Texas.  Financial Times is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and Judicial District, including its infringing activities alleged herein, from which Financial Times derives substantial revenue from goods sold to Texas residents and consumers.

13.     Financial Times maintains regular and established places of business in this District.

14.     Financial Times offers products and services and conducts business in this District as described below.

15.     Financial Times commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

16.     F.T. Publications Inc. is an agent of the Defendant and a New York corporation with a mailing address at 330 Hudson Street, 8th Floor, C/O Kirsty Devine, New York, NY 10013.

17.     Upon information and belief, Defendant's agents do business and/or are registered to do business as Financial Times with the Defendant's consent.

18.     Upon information and belief, Financial Times has contracted with Defendant's agents and/or Financial Times directs and controls its agents actions relevant to this operative complaint; Financial Times has consented and assented to the agents acting on its behalf; and the agents have consented to act on behalf of Financial Times.

19.     Upon information and belief, Financial Times is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, based on its substantial business activities conducted in the State of Texas and this Judicial District, including: (1) its infringing activities, as alleged herein, by which Defendant purposefully avails itself of the privilege of conducting its business activities in this State and this Judicial District and, thus, submits itself to the jurisdiction of this Court; and (2) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this Judicial District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported to and targeting Texas residents and residents of this Judicial District vicariously through

and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. *See Subscribe*, FINANCIAL TIMES, https://subs.ft.com/products (last visited Sept. 27, 2023). Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing Financial Times Products in Texas, including in this District.

20.    This Court has personal jurisdiction over Financial Times, directly and/or through the activities of Financial Times's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers. Through direction and control of these various entities, Financial Times has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Financial Times would not offend traditional notions of fair play and substantial justice.

21.    Upon information and belief, Financial Times controls or otherwise directs and authorizes the activities of its related entities directly via its agents and distribution partners, solution partners, brand ambassadors, and other service providers in the U.S., Financial Times has placed and continues to place infringing products into the U.S. stream of commerce. Financial Times has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this Judicial District and the State of Texas. *See Litecubes, LLC v. Northern Light Products, Inc*., 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under

§ 271(a)).

22.    Upon information and belief, Financial Times utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products directly to consumers and other users in the U.S.

23.    This Court has personal jurisdiction over Financial Times, directly and/or indirectly via the activities of Financial Times's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers. Alone and in concert with or via direction and control of at least these entities, Financial Times has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas.  Financial Times directly and via direction and control of or by its related entities participates in the manufacture, shipping, publication, importing, and distribution of Financial Times Products to the U.S.  For example, Financial Times is the publisher of the Newspaper and FT.com.    *See, e.g.*, FINANCIAL TIMES, https://help.ft.com/legal-privacy/terms-and-conditions/ (last visited Sept. 27, 2023).   Based on public information and belief, Financial Times delivers, sells, provides, and offers the Accused Products to consumers in this State and in this District.  *See Help Centre*, FINANCIAL TIMES, https://help.ft.com/faq/personal-subscriptions/Where-do-you-deliver-the-FT-Newspaper-in-the-US/ (last visited Sept. 27, 2023) (asserting that Financial Times delivers subscriptions to Dallas, Texas); *see also Subscribe*, FINANCIAL TIMES, https://subs.ft.com/bundleoptions (last visited Sept. 27, 2023) (offering and selling Financial Times subscriptions that deliver print and digital content to customers); *see also Subscribe*, FINANCIAL TIMES, https://subs.ft.com/products (last visited Sept. 27, 2023).

24.    Upon information and belief, Financial Times directs, delivers, sells, provides, and

offers the Accused Products to consumers in this State and in this District, including but not limited to businesses and corporations headquartered or operating in this District, and their employees who reside in this District. For example, upon public information and belief, Financial Times directs, delivers, sells, provides, and offers the Accused Products to agents and employees of Caterpillar, Inc., who work and reside in this District. *See Professional*, FINANCIAL TIMES, https://professional.ft.com/en-gb/customer-stories/professional-subscriptions/caterpillar/ (last visited Sept. 27, 2023). For instance, Caterpillar Inc.'s corporate headquarters is located in Irving, Texas; Caterpillar also has a manufacturing plant located in Sherman, Texas, and a distribution center in Waco, Texas. *See, e.g.*, CATERPILLAR, https://www.caterpillar.com/en/company/global-footprint/americas/united-states.html (last visited Sept. 27, 2023).

25.   Financial Times also recruits "Financial Times Talent" via its "FT Talent Ambassador Program" and "FT Talent Challenge" program in the U.S. *See, e.g.*, *About Us*, FINANCIAL TIMES, *Careers*, https://aboutus.ft.com/careers (last visited Sept. 27, 2023). These brand ambassadors are compensated for promoting Financial Times Products on social media and participating in marketing campaigns to raise awareness of Financial Times Products and their respective brands, which, ultimately, increases sales.

26.   Based on Financial Times's connections and relationship with local and national retailers and digital distribution platforms, Financial Times knows that Texas is a termination point of its established distribution channels, including the online stores offering Financial Times Products to users in Texas. Financial Times, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 U.S. Dist. LEXIS 34767, at (E.D. Tex. 2009).

27.   Financial Times owns the "Financial Times" and "FT" trademarks found on the

website where Defendant offers, uses, and sells the Accused Products.  *See, e.g.*, *TESS*, USPTO, https://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4803:g70059.2.32;    *TESS*,    USPTO, https://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4803:g70059.2.33.    Therefore,  Financial Times, alone and in concert with related entities, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis.

28.     This Court has personal jurisdiction over Financial Times, directly and/or through the activities of Financial Times's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers. Through its own conduct and through direction and control of these entities, Financial Times has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Financial Times would not offend traditional notions of fair play and substantial justice.

29.     In the alternative, the Court has personal jurisdiction over Financial Times under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law; Financial Times is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over Financial Times is consistent with the U.S. Constitution.

30.     Venue is proper against Defendants in this District pursuant to 28 U.S.C. § 1400(b) and 1391(b) and (c).  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

31.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Financial Times is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391I(3).  *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland

does not alter" the alien-venue rule.).

32.    On information and belief, Financial Times has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this Judicial District both proper and convenient for this action.

### THE ACCUSED PRODUCTS

33.    Accessify repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

34.    Based upon public information, Financial Times owns, operates, advertises, and/or controls the website domains https://financialtimes.com/ and https://www.ft.com/, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

35.    Financial Times uses, causes to be used, sells, offers for sale, provides, supplies, or distributes Financial Times's news products and services through, at least, the Financial Times website, https://financialtimes.com/ and https://ft.com/, which include, at least, Defendant's paywall and functions and operations for viewing and accessing digital content. *See, e.g.*, FINANCIAL TIMES, https://ft.com/ (last visited Sept. 27, 2023); FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**); SUBDOMAIN FINDER, *Results of ft.com*, https://subdomainfinder.c99.nl/scans/2023-09-05/ft.com (last visited Sept. 12, 2023).

36.    Based upon public information, Financial Times owns, operates, advertises, controls, sells, imports, and/or offers for sale, and instructs its subsidiaries, affiliates, and end users to use the hardware, software, and functionality that allows users to use, access, view, and purchase

digital content and information from the Financial Times website ("Accused Products"). *See, e.g.*, FINANCIAL TIMES, https://ft.com/ (last visited Sept. 27, 2023); FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**); SUBDOMAIN FINDER, *Results of ft.com*, https://subdomainfinder.c99.nl/scans/2023-09-05/ft.com (last visited Sept. 12, 2023).



FIG. 2A: Screenshot of content and information on the Financial Times's website. FINANCIAL TIMES, https://ft.com/ (last visited Sept. 27, 2023).



FIG. 2B: Screenshot of content and information on the Financial Times's website, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023).



FIG. 3A: Screenshot of a request to access to https://financialtimes.com.



<u>FIG. 3B</u>: Screenshot of the Financial Times's Website after receiving a request to access https://financialtimes.com.  FINANCIAL TIMES, https://ft.com/ (last visited Sept. 27, 2023).

37.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,418,356

38.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

39.    The USPTO duly issued U.S. Patent No. 11,418,356 (hereinafter, the "'356") on August 16, 2022 after full and fair examination of Application No. 16/728,621, which was filed on December 27, 2019.  *See* '356 patent at p. 1.

40.    Accessify owns all substantial rights, interest, and title in and to the '356 patent, including the sole and exclusive right to prosecute this action and enforce the '356 patent against infringers and to collect damages for all relevant times.

41.     The claims of the '356 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of facilitating various functional, commercial and transactional steps in distributing an information product including searching, selecting, previewing, purchase evaluation, offering for sale, marketing, providing access, transmitting, rendering, conveying, shipping, on-demand delivery, renting, and/or selling said information product.

42.     The written description of the '356 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43.     Financial Times has directly infringed one or more claims of the '356 patent by using, providing, supplying, or distributing the Accused Products.

44.     Financial Times has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '356 patent.

45.     For example, Financial Times, using the Accused Products, including but not limited to the Financial Times paywall, and associated hardware, software, applications, and functionalities, performs a method of distributing and transmitting a digital work, comprising: receiving a request for a digital work and a criteria from a customer; creating, in response to receiving the request and the criteria, a masked digital work by adding one or more masking effect layers to an original form of the digital work to add a masking effect to the original form of the digital work, the masking effect being dynamically generated by selecting the one or more masking

effect layers to add to the original form of the digital work based at least in part on the criteria received from the customer, the masking effect being of a utility-reducing character and adapted to affect at least one aspect of the original form of the digital work selected from a group consisting of display, audio, playback quality, and resolution of the digital work; transmitting, in response to the request, the masked digital work; receiving, in response to transmitting the masked digital work, a further communication relating to the digital work; evaluating whether the further communication satisfies one of a plurality of predetermined criteria; and in response to the further communication satisfying a first predetermined criteria transmitting the digital work in the original form, wherein the criteria from the customer includes a search term that is used to generate a selected relevant portion of the digital work, the masking effect being adapted to affect at least a portion of the digital work determined to be outside of the selected relevant portion.

46.     Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed the '356 patent by inducing others to directly infringe the '356 patent. Financial Times has induced end-users, including, but not limited to, Financial Times's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '356 patent by providing or requiring use of the Accused Products. Financial Times took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '356 patent, including, for example, claim 1 of the '356 patent. Such steps by Financial Times included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Financial Times is performing these steps, which constitute induced

infringement with the knowledge of the '356 patent and with the knowledge that the induced acts constitute infringement. Financial Times is aware that the normal and customary use of the Accused Products by others would infringe the '356 patent. Financial Times's inducement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

47.     Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed by contributing to the infringement of the '356 patent. Financial Times has contributed to the direct infringement of the '356 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '356 patent, including, for example, claim 1 of the '356 patent. The special features constitute a material part of the invention of one or more of the claims of the '356 patent and are not staple articles of commerce suitable for substantial non-infringing use. Financial Times's contributory infringement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

48.     Financial Times had knowledge of the '356 patent at least as of the date when they were notified of the filing of this action.

49.     Furthermore, on information and belief, Financial Times has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents

of others, and thus have been willfully blind of Accessify' patent rights.

50.     Financial Times's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Financial Times.

51.     Financial Times's direct infringement of one or more claims of the '356 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Accessify' rights under the patent.

52.     Accessify or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '356 patent.

53.     Accessify has been damaged as a result of the infringing conduct by Financial Times alleged above.  Thus, Financial Times is liable to Accessify in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

54.     Accessify has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Accessify has and will continue to suffer this harm by virtue of Financial Times's infringement of the '356 patent.  Financial Times's actions have interfered with and will interfere with Accessify' ability to license technology.  The balance of hardships favors Accessify' ability to commercialize its own ideas and technology.  The public interest in allowing Accessify to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,316,032

55.     Accessify repeats and re-alleges the allegations in the Paragraphs above as though

fully set forth in their entirety.

56.     The USPTO duly issued U.S. Patent No. 7,316,032 (hereinafter, the "'032 patent") on January 1, 2008, after full and fair examination of Application No. 10/307,832, which was filed on December 2, 2002.  *See* '032 patent at p. 1.  A Certificate of Correction was issued on January 26, 2010.  *See id.* at p. 24.

57.     Accessify owns all substantial rights, interest, and title in and to the '032 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

58.     The claims of the '032 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function and operation for distributing an information product or an electronic digital work, of potential commercial value, to a potential receiver, in a masked or reduced utility configuration and rendering said information product in its original unmasked configuration upon receipt of payment or due consideration.

59.     The written description of the '032 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60.     Financial Times has directly infringed one or more claims of the '032 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

61.     Financial Times has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '032 patent.

62.     For example, Financial Times, using the Accused Products, including but not limited to the Financial Times paywall, and associated hardware, software, applications, and functionalities, performs a step of a method for allowing a user to preview an information product, said method comprising the steps of: providing a preview version of said information product; said preview version being created by superposing a masking effect on an original form of said information product, said preview version being readily accessible and remaining representative of said original form of said information product and enabling said user in evaluating said information product for making a purchase decision, said masking effect being superposed on a region of said information product and adapted to interfere with receiving of said information product in said original form by said user; allowing said user to access said preview version of said information product; and controlling at least one of presence, absence, duration of application and permanence of said masking effect, superposed on said information product, in accordance with at least one criterion thereby controlling receiving of said information product in said original form by said user.

63.     Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed the '032 patent by inducing others to directly infringe the '032 patent. Financial Times has induced end-users, including, but not limited to, Financial Times's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '032 patent by providing or requiring use of the Accused Products. Financial Times took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '032 patent, including, for example, claim 1 of the '032 patent. Such steps by Financial Times included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products

in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Financial Times is performing these steps, which constitute induced infringement with the knowledge of the '032 patent and with the knowledge that the induced acts constitute infringement. Financial Times is aware that the normal and customary use of the Accused Products by others would infringe the '032 patent. Financial Times's inducement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

64.     Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed by contributing to the infringement of the '032 patent. Financial Times has contributed to the direct infringement of the '032 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '032 patent, including, for example, claim 1 of the '032 patent. The special features constitute a material part of the invention of one or more of the claims of the '032 patent and are not staple articles of commerce suitable for substantial non-infringing use. Financial Times's contributory infringement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

65.     Financial Times had knowledge of the '032 patent at least as of the date when they

were notified of the filing of this action.

66.      Furthermore, on information and belief, Financial Times has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Accessify' patent rights.

67.      Financial Times's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Financial Times.

68.      Financial Times's direct infringement of one or more claims of the '032 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Accessify' rights under the patent.

69.      Accessify or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '032 patent.

70.      Accessify has been damaged as a result of the infringing conduct by Financial Times alleged above.  Thus, Financial Times is liable to Accessify in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

71.      Accessify has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Accessify has and will continue to suffer this harm by virtue of Financial Times's infringement of the '032 patent.  Financial Times's actions have interfered with and will interfere with Accessify' ability to license technology.  The balance of hardships favors Accessify' ability to commercialize its own ideas and technology.  The public interest in allowing Accessify to enforce its right to exclude outweighs other public interests, which

supports injunctive relief in this case.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,562,397

72.    Accessify repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

73.    The USPTO duly issued U.S. Patent No. 7,562,397 (hereinafter, the "'397 patent") on July 14, 2009 after full and fair examination of Application No. 11/017,381 which was filed on December 20, 2004. *See* '397 patent at p. 1.

74.    Accessify owns all substantial rights, interest, and title in and to the '397 patent, including the sole and exclusive right to prosecute this action and enforce the '397 patent against infringers and to collect damages for all relevant times.

75.    The claims of the '397 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of facilitating various functional, commercial and transactional steps in distributing an information product including—searching, selecting, previewing, purchase evaluation, offering for sale, marketing, providing access, transmitting, rendering, conveying, shipping, on-demand delivery, renting, and/or selling said information product.

76.    The written description of the '397 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

77.    Financial Times has directly infringed one or more claims of the '397 patent by

making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

78.     Financial Times has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '397 patent.

79.     For example, Financial Times, using the Accused Products, including but not limited to the Financial Times paywall, and associated hardware, software, applications, and functionalities, performs a step of a method for controlling the distribution of a digital work, said method comprising the steps of: arranging said digital work into a plurality of layers, said plurality of layers comprising at least a first layer and a second layer, said first layer comprising a masking effect; superposing said first layer onto said second layer, said masking effect being adapted to interfere with receiving of said digital work in an original configuration by a user, thereby defining a masked configuration of said digital work; providing said digital work in said masked configuration, wherein said masked configuration being readily accessible and adapted for providing a preview version of said digital work; allowing said user to access said preview version of said digital work; and controlling at least one of presence of said masking effect, absence of said masking effect, duration of application of said masking effect and permanence of said masking effect thereby controlling receiving of said digital work in said original configuration by said user.

80.     Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed the '397 patent by inducing others to directly infringe the '397 patent. Financial Times has induced end-users, including, but not limited to, Financial Times's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '397 patent by providing or requiring use of the Accused Products.  Financial Times took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '397 patent,

including, for example, claim 1 of the '397 patent. Such steps by Financial Times included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Financial Times is performing these steps, which constitute induced infringement with the knowledge of the '397 patent and with the knowledge that the induced acts constitute infringement. Financial Times is aware that the normal and customary use of the Accused Products by others would infringe the '397 patent. Financial Times's inducement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

81.     Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed by contributing to the infringement of the '397 patent. Financial Times has contributed to the direct infringement of the '397 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '397 patent, including, for example, claim 1 of the '397 patent. The special features constitute a material part of the invention of one or more of the claims of the '397 patent and are not staple articles of commerce suitable for substantial non-infringing use. Financial Times's contributory infringement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*,

https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

82.    Financial Times had knowledge of the '397 patent at least as of the date when they were notified of the filing of this action.

83.    Furthermore, on information and belief, Financial Times has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Accessify' patent rights.

84.    Financial Times's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Financial Times.

85.    Financial Times's direct infringement of one or more claims of the '397 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Accessify' rights under the patent.

86.    Accessify or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '397 patent.

87.    Accessify has been damaged as a result of the infringing conduct by Financial Times alleged above.  Thus, Financial Times is liable to Accessify in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

88.    Accessify has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Accessify has and will continue to suffer this harm by virtue of Financial Times's infringement of the '397 patent.  Financial Times's actions have interfered with and will interfere with Accessify' ability to license technology.  The balance of

hardships favors Accessify' ability to commercialize its own ideas and technology.  The public interest in allowing Accessify to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,069,489

89.     Accessify repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

90.     The USPTO duly issued U.S. Patent No. 8,069,489 (hereinafter, the "'489 patent") on November 29, 2011 after full and fair examination of Application No. 12/488,586 which was filed on June 21, 2009.  *See* '489 patent at p. 1.

91.     Accessify owns all substantial rights, interest, and title in and to the '489 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

92.      The claims of the '489 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function and operation of facilitating various functional, commercial and transactional steps in distributing an information product including—searching, selecting, previewing, purchase evaluation, offering for sale, marketing, providing access, transmitting, rendering, conveying, shipping, on-demand delivery, renting, and/or selling said information product.

93.     The written description of the '489 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

94.    Financial Times has directly infringed and continues to directly infringe one or more claims of the '489 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, Financial Times has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '489 patent.

95.    As an example, Financial Times, using the Accused Products, including but not limited to the Financial Times paywall, and associated hardware, software, applications, and functionalities, performs a step of a method for controlling access to an original configuration of a digital work on a computer network, said method comprising the steps of providing a masked configuration of said digital work, said masked configuration of said digital work being created by applying a masking effect on said original configuration of said digital work, said masked configuration being adapted for interfering with at least one of viewing, hearing, displaying, and rendering of said digital work in said original configuration on a computer system, said masked configuration being readily accessible by a user of said digital work and remaining representative of said original configuration of said digital work thereby enabling said user to substantially examine said digital work; allowing said user to access said masked configuration of said digital work, for at least one of viewing, hearing, displaying and rendering of said digital work in said masked configuration on said computer system, and providing at least a preview version of said digital work on said computer system; controlling at least one of presence, absence, duration of application and permanence of said masking effect on said original configuration of said digital work, in accordance with at least one criterion thereby controlling receiving of said digital work in said original configuration by said user.

96.     Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed one or more claims of the '489 patent by inducing others to directly infringe said claims.  Financial Times has induced end-users, including, but not limited to, Financial Times's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '489 patent by providing or requiring use of the Accused Products. Financial Times took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '489 patent, including, for example, claim 1.  Such steps by Financial Times included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Financial Times is performing these steps, which constitute induced infringement with the knowledge of the '489 patent and with the knowledge that the induced acts constitute infringement.  Financial Times is aware that the normal and customary use of the Accused Products by others would infringe the '489 patent.  Financial Times's inducement is ongoing.  *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

97.     Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed by contributing to the infringement of the '489 patent.  Financial Times has contributed to the direct infringement of the '489 patent by their personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in

an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '489 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '489 patent and are not staple articles of commerce suitable for substantial non-infringing use. Financial Times's contributory infringement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

98.    Financial Times had knowledge of the '489 patent at least as of the date when they were notified of the filing of this action.

99.    Furthermore, on information and belief, Financial Times has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Accessify' patent rights.

100.    Financial Times's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Financial Times.

101.    Accessify or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '489 patent.

102.    Accessify has been damaged as a result of the infringing conduct by Financial Times alleged above. Thus, Financial Times is liable to Accessify in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

103.    Accessify has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Accessify has and will continue to suffer this harm by virtue of Financial Times's infringement of the '489 patent.  Financial Times's actions have interfered with and will interfere with Accessify' ability to license technology.  The balance of hardships favors Accessify' ability to commercialize its own ideas and technology.  The public interest in allowing Accessify to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,554,424

104.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

105.    The USPTO duly issued U.S. Patent No. 10,554,424 (hereinafter, the "'424 patent") on February 4, 2020 after full and fair examination of Application No. 12/497,687 which was filed on July 5, 2009.  *See* '424 patent at p. 1.

106.    Accessify owns all substantial rights, interest, and title in and to the '424 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

107.    The claims of the '424 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function and operation of facilitating various functional, commercial and transactional steps in distributing an information product including-searching, selecting, previewing, purchase evaluation, offering for sale, marketing, providing access, transmitting, rendering, conveying, shipping, on-demand delivery, renting, and/or selling said information product.

108.    The written description of the '424 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

109.    Financial Times has directly infringed one or more claims of the '424 patent by using, providing, supplying, or distributing the Accused Products.

110.    Financial Times has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '424 patent.

111.    As an example, Financial Times, using the Accused Products, including but not limited to the Financial Times paywall, and associated hardware, software, applications, and functionalities, performs a method comprising: receiving a request regarding an information product from a user device over a computer network; generating a preview version of the information product in accordance with customer-specified relevance criteria received from the user device; selecting a masking effect from a plurality of masking effects based on the information product and customer preview preferences; superposing the masking effect on the preview version of the information product by placing or laying the masking effect over or above the preview version to create a masked version of the preview version of the information product; providing the user device access to the masked version of the preview version of the information product, over the computer network, prior to purchase of the information product, in accordance with the request; offering the preview version of the information product for sale with a purchase price based on the customer-specified relevance criteria.

112.    Since at least the time of receiving the complaint in this action, Financial Times has

also indirectly infringed one or more claims of the '424 patent by inducing others to directly infringe said claims. Financial Times has induced end-users, including, but not limited to, Financial Times's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '424 patent by providing or requiring use of the Accused Products. Financial Times took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '424 patent, including, for example, claim 1. Such steps by Financial Times included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Financial Times is performing these steps, which constitute induced infringement with the knowledge of the '424 patent and with the knowledge that the induced acts constitute infringement. Financial Times is aware that the normal and customary use of the Accused Products by others would infringe the '424 patent. Financial Times's inducement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

113. Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed by contributing to the infringement of the '424 patent. Financial Times has contributed to the direct infringement of the '424 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims

of the '424 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '424 patent and are not staple articles of commerce suitable for substantial non-infringing use. Financial Times's contributory infringement is ongoing. *See, e.g.*, FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023) (showing Financial Times's paywall); *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023) (**Exhibit 1**).

114.    Financial Times had knowledge of the '424 patent at least as of the date when they were notified of the filing of this action.

115.    Furthermore, on information and belief, Financial Times has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Accessify' patent rights.

116.    Financial Times's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Financial Times.

117.    Accessify or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '424 patent.

118.    Accessify has been damaged as a result of the infringing conduct by Financial Times alleged above. Thus, Financial Times is liable to Accessify in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

119.    Accessify has suffered irreparable harm, through its loss of market share and goodwill,

for which there is no adequate remedy at law.  Accessify has and will continue to suffer this harm by virtue of Financial Times's infringement of the '424 patent.  Financial Times's actions have interfered with and will interfere with Accessify' ability to license technology.  The balance of hardships favors Accessify' ability to commercialize its own ideas and technology.  The public interest in allowing Accessify to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,039,722

120.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

121.     The USPTO duly issued U.S. Patent No. 7,039,722 (hereinafter, the "'722 patent") on May 2, 2006 after full and fair examination of Application No. 09/709,645 which was filed on November 13, 2000.  *See* '722 patent at p. 1.

122.     Accessify owns all substantial rights, interest, and title in and to the '722 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

123.     The claims of the '722 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of a translating web addresses via a naming scheme that permits effective use of all scheme-specific names and assists in the effective use of existing scheme-specific names on limited keyboard devices, such as number pads on phones.

124.     The written description of the '722 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

125.    Financial Times has directly infringed one or more claims of the '722 patent by using, providing, supplying, or distributing the Accused Products.

126.    Financial Times has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '722 patent.

127.    As an example, Financial Times, using the Accused Products, performs a step of a method of generating from a computer a request for a domain name, comprising the steps of: receiving on the computer a name associated with the domain name, said received name having a top-level domain portion and a sub-domain portion, both in a native language character set; selecting a translation formula: translating said received name with said translation formula to generate a scheme specific name by converting a sub-domain portion of said received name into a different sub-domain portion, said scheme specific name being in the native language character set; and generating, from the computer, a request for the domain name based upon said scheme specific name.

128.    More specifically, Financial Times, using the Accused Products, performs a step of receiving on the computer a name associated with the domain name, (for example, "financialtimes.com"), said received name having a top-level domain portion and a Sub-domain portion, both in a native language character set selecting a translation formula: translating said received name with said translation formula to generate a scheme specific name  by converting a sub-domain portion of said received name into a different sub-domain portion, (for example, "ft.com"), said scheme specific name being in the native language character set; and generating,

from the computer, a request for the domain name based upon said scheme specific name. *See, e.g.*, FINANCIAL TIMES, https://ft.com/ (last visited Sept. 27, 2023); *see also* FIGs. 3A and 3B.

129.    Accessify or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '722 patent.

130.    Accessify has been damaged as a result of the infringing conduct by Financial Times alleged above.  Thus, Financial Times is liable to Accessify in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,752,656

131.    Accessify repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

132.    The USPTO duly issued U.S. Patent No. 7,752,656 (hereinafter, the "'656 patent") on July 6, 2010, after full and fair examination of Application No. 12/179,084 which was filed on July 24, 2008.  *See* '656 patent at p. 1.  A Certificate of Correction was issued on February 1, 2011. *See id.* at p. 16.

133.    Accessify owns all substantial rights, interest, and title in and to the '656 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

134.    The claims of the '656 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the operation and function of using a DNS server operating on a wide area network to enable an authorized reception device to receive

(or be provided with) restricted content data associated with a particular wide area network address and redefine the domain name associated with a particular wide area network address.

135.    The written description of the '656 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

136.    Financial Times has directly infringed and continues to directly infringe one or more claims of the '656 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, Financial Times has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '656 patent.

137.    As an example, Financial Times, using the Accused Products, performs a method for controlling access to content, the method comprising: receiving, at a name server, requests for content from a plurality of network devices, each of the requests indicating respective requested domain names, wherein the name server is operably associated with a memory storing a domain name table listing IP addresses for network content servers in association with domain names; determining whether requests for content are associated with respective user access privileges for the respective requested domain names; determining, for ones of the requests associated with respective user access privileges, corresponding ones of IP addresses associated with the respective requested domain names in the domain name table; determining, for ones of the requests not associated with respective user access privileges, an IP address for an authorization server configured to request authorization data from network devices; and responding to the requests for

content by providing corresponding ones of the IP addresses and the IP address for the authorization server to respective requesting ones of the plurality of network devices.

138.    More specifically, as one example, Financial Times, using the Accused Products, performs a method for controlling access to content, the method comprising: receiving, at a name server, requests for content from a plurality of network devices, each of the requests indicating respective requested domain names.    *See, e.g.*, SUBDOMAIN FINDER, *Results of ft.com*, https://subdomainfinder.c99.nl/scans/2023-09-05/ft.com (last visited Sept. 12, 2023).

139.    Accessify or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '656 patent.

140.    Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed and continues to indirectly infringe one or more claims of the '656 patent by inducing others to directly infringe said claims.    Financial Times has induced end-users, including, but not limited to, Financial Times's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '656 patent by providing or requiring use of the Accused Products.    Financial Times has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '656 patent, including, for example, claim 1.    Such steps by Financial Times included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.    Financial Times is performing these steps, which constitute induced infringement with the knowledge of the '656

patent and with the knowledge that the induced acts constitute infringement. Financial Times is aware that the normal and customary use of the Accused Products by others would infringe the '656 patent. Financial Times's inducement is ongoing.

141.    Since at least the time of receiving the complaint in this action, Financial Times has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '656 patent. Financial Times has contributed to the direct infringement of the '656 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '656 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '656 patent and are not staple articles of commerce suitable for substantial non-infringing use. Financial Times's contributory infringement is ongoing.

142.    Financial Times had knowledge of the '656 patent at least as of the date when it was notified of the filing of this action.

143.    Furthermore, on information and belief, Financial Times has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Accessify' patent rights.

144.    Financial Times's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Financial Times.

145.    Accessify has been damaged as a result of the infringing conduct by Financial Times alleged above. Thus, Financial Times is liable to Accessify in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

146.    Accessify has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Accessify has and will continue to suffer this harm by virtue of Financial Times's infringement of the '656 patent.  Financial Times's actions have interfered with and will interfere with Accessify' ability to license technology.  The balance of hardships favors Accessify' ability to commercialize its own ideas and technology.  The public interest in allowing Accessify to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

147.    Accessify hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

148.    Accessify requests that the Court find in its favor and against Financial Times, and that the Court grant Accessify the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Financial Times or others acting in concert therewith;

b.    A permanent injunction enjoining Financial Times and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '356 patent, '032, patent '397 patent, '489 patent, '424 patent, '722 patent, and '656 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.    Judgment that Financial Times accounts for and pays to Accessify all damages to and

costs incurred by Accessify because of Financial Times's infringing activities and other conduct complained of herein;

d.  Judgment that Financial Times's infringements be found willful as to the '356 patent, '032, patent '397 patent, '489 patent, '424 patent, '722 patent, and '656 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Financial Times's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Accessify its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>September 29, 2023</u>

Respectfully submitted,

By: <u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088) *
Jonathan R. Miller (GA507179) *
Travis E. Lynch (GA 162373) *
**Rozier Hardt McDonough, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (470) 480-9505, -9517, -9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**Rozier Hardt McDonough, PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**Rozier Hardt McDonough, PLLC**
1500 K Street, 2nd Floor
Washington, DC 20005
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

***Attorneys for Plaintiff A****CCESSIFY*, *LLC*

\* Admitted to the Eastern District of Texas

**List of Exhibits**

1. *Blog*, Poool, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023).

**List of Supportive Links**

A. U.S. Patent No. 11,418,356, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11418356.

B. U.S. Patent No. 7,316,032, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7316032.

C. U.S. Patent No. 7,562,397, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7562397.

D. U.S. Patent No. 8,069,489, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8069489.

E. U.S. Patent No. 10,554,424, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10554424.

F. U.S. Patent No. 7,039,722, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7039722.

G. U.S. Patent No. 7,752,656, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7752656.

H. *Trademark Electronic Search System*, USPTO, https://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4803:g70059.2.32.

I. *Trademark Electronic Search System*, USPTO, https://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4803:g70059.2.33.

J. *About Us*, Financial Times, *Careers*, https://aboutus.ft.com/careers/what-we-do/technologyandproduct (last visited Sept. 18, 2023).

K. *Subscribe*, Financial Times, https://subs.ft.com/products (last visited Sept. 27, 2023).

L. Financial Times, https://help.ft.com/legal-privacy/terms-and-conditions/ (last visited Sept. 27, 2023).

M. *Help Centre*, Financial Times, https://help.ft.com/faq/personal-subscriptions/Where-do-you-deliver-the-FT-Newspaper-in-the-US/ (last visited Sept. 27, 2023)

N. *Subscribe*, Financial Times, https://subs.ft.com/bundleoptions (last visited Sept. 27, 2023).

O. *About Us*, Financial Times, *Careers*, https://aboutus.ft.com/careers (last visited Sept.

27, 2023).

P.  FINANCIAL TIMES, https://ft.com/ (last visited Sept. 27, 2023).

Q.  FINANCIAL TIMES, https://www.ft.com/content/5b27f142-613f-437c-890d-7abe1be6d819 (last visited Sept. 27, 2023).

R.  *Blog*, POOOL, *How to Optimize Your Paywall*, https://blog.poool.fr/how-to-optimize-your-hard-paywall (last visited Sept. 27, 2023).

S.  SUBDOMAIN FINDER, *Results of ft.com*, https://subdomainfinder.c99.nl/scans/2023-09-05/ft.com (last visited Sept. 12, 2023).

T.  CATERPILLAR, https://www.caterpillar.com/en/company/global-footprint/americas/united-states.html (last visited Sept. 27, 2023).